Williams, O. J.
Assuming, as is contended in behalf of the plaintiff in error, that in the ascertainment of the amount found due her, in the decree of foreclosure, Dauntz obtained cr.edit for the $150.00 he alleges was received by her out of the purchase money which he paid for the land, the question remains, whether he is entitled to the benefit of the two prior mortgages, and to enforce them against the plaintiff, as liens superior to hers, to the extent that the purchase money paid by him fob the land was applied in payment of the indebtedness they secured. It is a well settled' general rule, that “when any person having a sub *546 sequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep' alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection.” Pom. Eq. Jur., section 1212. Among the persons so protected are grantees of the mortgagor, and any subsequent grantee who has taken the land simply subject to the mortgage. And in Jones on Mortgages, section 869, it is said that: “If a mortgage be paid by a person not personally liable, for the purpose of protecting his estate, he may have the benefit of it in aid of his title without any assignment to him, or proof of any intention on his part to keep it alive.” The rule, it is held, does not include a purchaser who buys the naked- equity of redemption as such, and pays for nothing more, nor one who assumes the payment of the mortgage debt and receives a corresponding reduction in the purchase price of the land, for the reason, that in the one ease he receives all the estate he purchased and paid for, and in the other he becomes the principal debtor; and in neither case can have any equitable right against the mortgagor, or other incumbrancer. The answer in this ease will not admit of a construction warranting the conclusion that the purchase by Dauntz was of the equity of redemption eo nomine, nor that he assumed the p’ayment of the mortgage indebtedness, or any part of it, with a reduction on that account in the price paid for *547 the land. Neither conclusion is consistent with the allegation that he purchased the land at its full value; for that fairly indicates an intention to acquire and be invested with the complete title; and that intention is further shown by the fact that the purchase price was applied toward the payment of existing incumbrances. That application, though made with the assent of the vendor, did not constitute an assumption of the mortgage debt by the purchaser, nor render him liable to the mortgagee, nor exonerate the mortgagor. The purchaser became the owner of the land subject to the unsatisfied incumbrances upon it. True, at the time of the conveyance to Dauntz, the condition of the mortgages had become broken, and the estate he acquired was the equity of redemption; but that is .sufficient to sustain his right to subrogation, if otherwise entitled to it. He is not in the situation of a stranger or mere volunteer discharging anincumberance. Any person having an interest in property subject to an incumbrance which may defeat or impair his title, has a right to disengage the property from the incumbrance by payment, and upon payment, if the debt is notone for whichhe is ultimately liable, he is entitled to subrogation to the fights of the incumbrancer against the property. Sheldon on Subrogation, section 12. “Subrogation arises by operation of law whenever the mortgage debt is extinguished by one, other than the mortgagor, who is entitled to redeem.” Jones on Mortgages, section 874. There can be no doubt that Dauntz, after his purchase, had the right to redeem, by payment of the mortgages. And the rule above stated is frequently applied in favor of the owner of the equity of redemption who has discharged an incumbrance on the land, *548 which was in existence when he became the owner. Redemption consists in payment, and hence, in such case, subrogation by operation of law results from payment of the mortgage debt; and it is not essential to that result that there be an avowed intention at the time to keep the mortgage alive for the protection of the owner of the equity of redemption ; an intention to that effect will be presumed. “Where an owner of lands who is not primarily and personally liable to pay a debt secured by mortgage or other charge on the land, pays it, he may keep the lien alive as a security for himself against other incumbrances or titles. Whether he does so is a question of intention, and when it is evidently for his benefit, that intention will be presumed.” Pom. Eq. Jur., section 798. “The rule that payment by a mortgagor extinguishes the mortgage, is founded upon the reason that there could generally be no advantage to him in keeping on foot his own mortgage against his own estate. But no such reason exists when a purchaser pays an incumbrance existing before the time of his purchase. Frequently there is an advantage in keeping the mortgage on foot as a security; and whenever there is such advantage, the purchaser is entitled to • hold it as a separate title.” 1st Jones on Mortgages, section 869.
Nor is it necessary, as counsel contend, that in order to secure.the purchaser in this right, he should be ignorant of the mortgage, or of the subordinate liens, at the time of his purchase. “The most common instance where the doctrine of subrogation is applied is in the case of purchasers of the equity of redemption with or without notice of existing liens. Thus, when the purchaser of land pays off a debt of his own grantor, secured by a *549 deed of trust upon the premises as a part of the purchase money, to protect his own property from sale, he will be subrogated to the deed of trust as against an intervening lien of the grantor. Here the payment is not voluntary as if made by a stranger, but is made by the puchaser to protect his own interest in the property. And in such a case a court of equity will keep alive the lien in his favor, notwithstanding it has been formally released without his knowledge and consent.” Semon v. Terhune, 25 A. L. Reg., 465, n. It is not believed, however, that equity, will so keep the lien on foot after its cancellation of record, as against rights intervening between that and the assertion, in the proper mode, of the right of subrogation. But that question does not arise in this case. The Shuster mortgage was taken while the two- prior mortgages were subsisting liens, and before Dauntz made his purchase.
It does not appear from the answer, whether, when the money paid by Dauntz on the land was applied on the mortgages held by Deshler, the amount then due on them exceeded the payment, or the pay • ment was sufficient to satisfy the balance then remaining due. But that does not seem important here, for if it were only a partial payment of the mortgage debts, leaving an unsatisfied balance due on them, as against which, and the holder of the mortgages, there could be no equity in favor of Dauntz that could interfere with the enforcement of the mortgage security, his right of subrogation as against the later liens, to the extent of the payment, would nevertheless exist. It has been held that a purchaser of an equity of redemption incumbered with four different liens, who paid off the first two liens and part of the third, was subrogated *550 by the payment to the rights of the creditors under their respective liens to the extent they were so paid, and entitled to set them up and enforce them as against the holder of the fourth lien. Walker v. King, 45 Vt., 526. The same principle is recognized in Sidener v. Hawes, 37 Ohio St., 532. And see Simpson v. Hoyo, 94 N. Y. 189. Deshler was not made a party to the foreclosure suit, which probably would have been done if anything remained unpaid on his mortgages. At all events, he is not asserting any claim against this land, nor interposing any objection to the right asserted by Dauntz; and a consideration of his rights will be in time when' properly brought before the court.
But it is insisted that, as subrogation is founded in equity and can be invoked only when necessary to secure some equitable right, the remedy is inappropriate in this' case, because it would operate unjustly to the plaintiff. If it would, the remedy should be denied; but such we think, will not be its effect. Payment of the full value of land purchased, ordinarily entitles the purchaser to a good title; and when that payment is made toward the satisfaction of a paramount incumbrance, an intention to protect the title by relieving the land of the incumbrance is sufficiently obvious. There is no room for an inference that by payment on the first mortgage liens, there was an intention merely to advance the lien of the later mortgage, or to benefit its holder; although the plaintiff, as a partial holder of that mortgage, was benefited to the full amount of the payment, by reducing to that extent the prior liens on the other lands included in all of the mortgages, and thus augmenting the value of her security. Her position has in no way been changed for the worse on account of the pay *551 ment, and, in ease the defendant is allowed the benefit of the prior mortgages for his reimbursement, her security remains precisely what it was when she took a partial transfer of the Shuster mortgage. While on the other hand, if the defendant is denied that remedy, he must lose the property he bought and paid for, or pay for it twice in order to keep it. It is here his equity arises which enables him to call to his aid the doctrine of subrogation.
The case of Carter v. Goodin, 3 Ohio St., 75, cited, and apparently much relied upon by counsel for plaintiff in error, we do not regard as irreconcilable with the claim of' the defendant in error. There, it was sought by the grantees of land under a deed that was defective as a release of dower, to avail themselves of a mortgage executed by the grantor, in which the wife had joined, before the conveyance, to defeat an action brought by her for dower in the land, after the husband’s decease. The purchase money paid, was applied in discharge of the mortgage before the debt became due, and before there was any breach of its condition. The mortgage was given to secure the debt of the husband, and the grantees, in taking the conveyance, relied entirely on the release of dower contained in their deed; which, however, proved to be insufficient. The decision is placed upon these grounds, as shown by the opinion in which it is said: “This conveyance, therefore, upon which it was the evident intention of the parties to rely for their title, failing to contain a valid release of the dower, the grantees cannot help themselves by a resort to a satisfied mortgage, and especially one which was discharged by the mort *552 gagor himself before condition broken, and, therefore, before even the mortgagee himself had acquired any right which he could enforce against the premises.”
A more satisfactory ground for the decision, perhaps may be found in the fact that the charge created by the mortgage on the wife’s dower interest was for the security of her husband’s debt, and not her own; so that, the relation which she and her dower interest sustained to the creditor was analogous to, if not strictly that of a surety, which gave her the right to insist on the application of her husband’s estate to the satisfaction of the mortgage, to the exoneration of her own; and, as his property, the consideration paid him for the land, was so applied, the release of her estate thus accomplished, from the mortgage, simply secured to her what she was equitably entitled to. Mandel v. McClave, 46 Ohio St., 407. If her interest in the land had been subjected to the payment of the mortgage debt, leaving any part of her husband’s estate therein unappropriated to that purpose, she would herself have been entitled to be subrogated to the mortgage as against later liens, and would not be estopped from maintaining that right against the grantees in the deed, for the deed was not binding on her. See 24 Am. & Eng. Encyclopedia of Law, p. 228, and cases there cited.
The answer of Dauntz is sufficient to entitle him to priority over the plaintiff’s lien, to the extent that the consideration paid by him on the land was applied toward the satisfaction of the prior mortgages.

Judgment affirmed.